JAMES E. DRISCOLL, JR., et al., Respondents, v NEW YORK CITY TRANSIT AUTHORITY, Defendant, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant and Third-Party Plaintiff-Appellant. NEW YORK CITY TRANSIT AUTHORITY, Third-Party Defendant-Respondent.

First Department, July 8, 1976

*Joseph D. Ahearn* of counsel *(Williams & O'Neill,* attorneys), for Consolidated Edison Company of New York, Inc., defendant and third-party plaintiff-appellant.

*John A. Murray* of counsel *(Helen R. Cassidy* with him on the brief; *Stuart Riedel,* attorney), for New York City Transit Authority, third-party defendant-respondent.

*Herman Schmertz* of counsel *(Gair, Gair & Conason* and *Kurland, Monsour & Winn, P.C.,* attorneys), for respondents.

LUPIANO, J. On July 19, 1965, James Driscoll, then 11 years old, was severely injured when in the course of roller skating on Second Avenue, at its intersection with East 90th Street, Manhattan, the rear right wheel of a New York City Transit Authority (hereinafter NYCTA) bus, proceeding southerly on Second Avenue, ran over him. Suit to recover for personal injuries was instituted against the NYCTA on or about July 28, 1966. A separate suit against Consolidated Edison Com-

pany of New York, Inc. (hereinafter ConEd) was instituted on June 30, 1967. By order entered on May 8, 1968, the two actions were consolidated. In October, 1973, the consolidated action was apparently settled for $50,000, with each defendant agreeing to pay $25,000. However, this settlement was vacated by order entered October 10, 1974, which declares in pertinent part: "It appears from the extract of the minutes that this settlement was entered into under the impression that after the deduction of attorneys' fees the infant plaintiff would receive the balance of the settlement. In fact, however, there are liens which are outstanding in the total amount of nearly $17,000.00, which the lienholders are unwilling to waive." Special Term thereupon properly concluded that the settlement "was entered into as the result of a misunderstanding regarding the amount of money that the infant plaintiff would receive" and vacated same with restoration of the action to the trial calendar.

At the commencement of trial on September 9, 1975, plaintiffs informed the court that they had just settled their action against NYCTA for $50,000. At this time the infant plaintiff was over 21 years of age. Over ConEd's objection, premised on the *Dole v Dow* rule, the trial court granted plaintiffs' motion to sever their action against NYCTA. The next day, ConEd served third-party pleadings upon NYCTA, claiming that plaintiff James Driscoll was injured either through his own or through NYCTA's negligence, without any fault on ConEd's part, and seeking indemnification from the authority. At the trial, it was plaintiffs' contention that James Driscoll was roller skating easterly on 90th Street, in the gutter, that he tripped over an Edison cable running from an excavation made to repair a gas leak on the northwest corner of the intersection to a lamp post on the southwest corner; and that he was precipitated under the wheel of the southbound bus on Second Avenue. It was ConEd's contention that plaintiff was roller skating, not on the street, but down the south sidewalk of 90th Street and that the accident occurred when plaintiff roller skated off the south sidewalk into the path of the bus.

Subdivision (a) of section 15-108 of the General Obligations Law in effect when this case came on for trial provides that "[w]hen a release * * * is given to one of two or more persons liable or claimed to be liable in tort for the same injury * * * it does not discharge any of the other tortfeasors from liability for the injury * * * unless its terms expressly so provide, but

it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release * * * or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the [CPLR], *whichever is the greatest"* (emphasis supplied). Although at the trial's inception, the Trial Justice recognized at ConEd's urging that this statute "cover[s] the situation at hand," he nevertheless declared: "I will charge the jury in accordance with my understanding of the law, *period"* (emphasis supplied). During the course of the trial, the Trial Justice refused ConEd's repeated requests to apply section 15-108 of the General Obligations Law and reaffirmed his position that "this case is proceeding not on the theory of a joint tortfeasor, but on the issue that the Con Edison Company of New York was solely and wholly responsible for this accident and the resultant injuries. And I will not allow anything relating to anything other than that to come into issue here." At the trial's conclusion, the court denied ConEd's request to charge on the *Dole v Dow* apportionment to which ConEd again excepted. The error of the trial court in this regard seriously impaired ConEd's position since the pattern and development of the trial had been predetermined by the court's view regarding apportionment, to wit, that NYCTA's culpability would not be a factor in the course of the trial.*

---

* In the Practice Commentary to section 15-108 of the General Obligations Law in the 1975-1976 pocket part of McKinney's Consolidated Laws of New York, Dean Joseph M. McLaughlin states:

"The 1974 amendment to this section is designed to encourage settlement in tort cases, something, which had become troublesome after the decision in Dole v Dow Chemical Co., 1972, 30 N.Y. 2d 143, 331 N.Y.S. 2d 382, 282 N.E. 2d 288. Dole held that where A and B were joint tortfeasors but plaintiff sued only A, A could implead B for an equitable apportionment of liability. Following Dole, it was held that if P sued A and B, and A later settled with P, B could, nevertheless, implead A back into the action for a Dole apportionment. See e.g., Blass v. Hennessey, 1974, 44 A.D. 2d 405, 355 N.Y.S. 2d 506. This would obviously chill A's desire to settle the case, and the purpose of the amendment is to rekindle that desire.

"The first portion of section 15-108(a) is taken from the former General Obligations Law, section 15-108, and is designed to assure a plaintiff that he may settle his claim with one of several tortfeasors without prejudicing his right to pursue the other tortfeasors.

"To understand the new statute, it may help to begin with a hypothetical: assume that P is injured because of the negligence of A and B, two car drivers. Assume, further, that A settles with P for $10,000. This settlement assures A that he has bought his peace inasmuch as subdivision (b) of the new statute states that A is relieved from liability to B for contribution, assuming, of course, that the settlement was in good faith.

In addition, even assuming the propriety of the court's charge on "absolute nuisance," the trial court erred in not submitting to the jury the issue of whether ConEd had the requisite permits. In this area, the court merely cited sections 734(5)-2.0 and 734(5)-3.0 of the Administrative Code of the City of New York pertaining to permits, but left unexpressed and undelineated, the applicability or lack of applicability of the statute to the evidence in the record. The emergency work was being performed by ConEd pursuant to two permits—its annual permit and the Department of Highways permit. At trial a dispute arose as to whether ConEd had to obtain a new (third) permit with respect to the installation of the cable. It is well at this point to note that the complaint against ConEd alleges a single cause of action in negligence. Where "the gravamen of the complaint is nuisance which arises out of negligence" as compared and contrasted with a complaint where the gravamen "is an absolute nuisance or a nuisance *per se,* that is a nuisance based on an act which is unlawful even if performed with due care," the jury should be given the case on the negligence theory *(Delaney v Philhern Realty Holding Corp.,* 280 NY 461, 465; *McFarlane v City of Niagara Falls,* 247 NY 340, 347-348). It is sufficient to state that on this record, the trial court was deficient in its treatment of the nuances inherent in the foregoing observation.

Also, it was error to permit a diagram prepared by police officer Horel, who was not a witness to this unfortunate accident, to be admitted into evidence which tended to show by continuing arrows thereon that plaintiff James E. Driscoll, Jr. was roller skating in the street rather than on the sidewalk prior to the accident. This was not a record kept in the ordinary course of business and constituted hearsay evidence which was otherwise inadmissible. On the basis of all the afore-mentioned errors, a new trial is clearly warranted.

By notice of motion dated September 25, 1975, NYCTA

"The case will then proceed to trial against B who remains free to demand that the jury make a Dole apportionment of the damages between him and A (even though A is no longer a party). Assume that the jury finds a $50,000 verdict for P against B, but states that the 'equitable share of the damages' between A and B should be 50% each. Subdivision (a) of this section directs the court to reduce the verdict by the amount of the settlement or the amount of A's equitable share—whichever is greater. In the hypothetical, P's verdict against B would be reduced to $25,000. P, therefore, will recover a total of $35,000 ($10,000 from A, and $25,000 from B), and not the $50,000 to which jury said he was entitled. This is a risk the plaintiff takes when he elects to seize the bird in the hand by settling with one of the tortfeasors."

moved to dismiss ConEd's third-party complaint on the basis that section 15-108 of the General Obligations Law precluded the maintenance of same. In its order entered on January 14, 1976, subsequent to trial, the trial court granted the motion, properly relying on the said statute which states in subdivision (b) that "[a] release * * * by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in [CPLR art. 14]." The propriety of this determination highlights the inconsistent position taken by the Trial Judge with respect to ConEd's request to have apportionment rendered in conformance with the statute at the trial.

Accordingly, the order of the Supreme Court, New York County (SANDERS, J.), entered October 10, 1974, which, *inter alia,* vacated the settlement of this action and restored the action to the trial calendar and the order of said court (KAPLAN, J.), entered January 14, 1976, which granted the motion of the third-party defendant New York City Transit Authority to dismiss the third-party complaint of defendant and third-party plaintiff Consolidated Edison Company of New York, Inc., should be affirmed. The judgment of the Supreme Court, New York County (KAPLAN, J.), entered October 9, 1975, which adjudged, after a jury trial, that plaintiff James E. Driscoll, Jr., recover of ConEd the sum of $1,250,367.50 and that plaintiff Nora Driscoll recover of ConEd the sum of $200,000, should be reversed on the law and the matter remanded for a new trial with costs and disbursements to abide the event.

MURPHY, J. P. (dissenting in part). I would modify the judgment on appeal to the extent of crediting Con Ed with the sum of $50,000, the amount of NYCTA's settlement, and otherwise affirm said judgment and both orders on appeal.

On the instant record and upon the fair and appropriate instructions by the Trial Judge, the jury was fully justified in holding Con Ed liable under the doctrine of "absolute nuisance" for obstructing a public roadway without a requisite license. Accordingly, I see no reason to require plaintiffs to retry this case against said defendant.

Under the circumstances of this case, the Trial Judge's failure to give effect to section 15-108 of the General Obligations Law did not prejudice or impair Con Ed's position.

The credible evidence, accepted by the jury, placed the

blame for the accident, and resulting serious injuries to James Driscoll, on Con Ed. The only factual issue seriously contested at the trial was whether James was skating on the sidewalk or in the gutter of 90th Street before he came in contact with the bus. The evidence adduced to establish fault by NYCTA was sufficiently minimal to prompt Con Ed's counsel to confess in summation:

"We do not think—Con Edison does not think it has been proved that this bus was responsible for this accident. We think the bus was innocent; so we are not coming to you to say, 'Well we will say it was the bus, not Con Edison.' Perhaps that would be facile, an easy way out of it for us. We are not doing that.

"You have listened to the facts. There is nothing in this record that would indicate that the bus or the Transit Authority was in any way responsible. That is my view of the record. It does not have to be yours.

"I simply want you to know that is our view of the record."

Lastly, Officer Horel's rough sketch, even if erroneously admitted, was clearly recognized as innocuous.

In light of the foregoing, and since the record before us would not support an apportionment against NYCTA in excess of the amount it paid for a release, a reduction of plaintiffs' claim against Con Ed by $50,000 is the only corrective action which is required in this case.

BIRNS, SILVERMAN and LANE, JJ., concur with LUPIANO, J.; MURPHY, J.P., dissents in part in an opinion.

Orders, Supreme Court, New York County, entered on October 10, 1974, and January 14, 1976, affirmed, without costs and without disbursements; and judgment of said court, entered on October 9, 1974, reversed, on the law, and the matter remanded for a new trial, with $60 costs and disbursements of this appeal to abide the event.