OPINION OF THE COURT
John G. Connor, J.
This decision is rendered on plaintiffs’ motion for reargument of this court’s decision dated April 10, 1985 and judgment entered thereon April 19, 1985 in Albany County. Before addressing the legal issues, a review of the background of this and a related case is necessary.
In 1983 the Legislature enacted an elaborate funding scheme for the development of State correctional facilities (McKinney’s Uncons Laws of NY § 6267 [Prison Construction Act]; L 1983, ch 56, as amended by L 1983, chs 712, 713).
The purpose of the statute was to finance the construction *131 of new correctional facilities as well as the renovation and expansion of existing facilities to alleviate prison overcrowding caused by an "unprecedented growth” in the population of the State’s correctional facilities (Prison Construction Act § 1). The sum of $284,200,000 was appropriated from the State Capital Projects Fund to the State Department of Correctional Services to accomplish that purpose (Prison Construction Act § 3 [l]).* [1]
Additionally, the statute authorizes the State Urban Development Corporation (UDC) to issue bonds and notes totaling $380,000,000. The proceeds of these bonds and notes are to be used to repay the Department of Correctional Services, which would apparently then convey title to newly developed correctional facilities to UDC (Prison Construction Act §§ 5, 6). Thereafter, the State, through the Commissioner of General Services, is authorized to lease the facilities from UDC and in turn sublet them to the Department of Correctional Services. The State’s lease from UDC must specify a term no shorter than the debt service period on the UDC bonds and notes. Also, the rental payments are to be equal to the debt service on the bonds and notes. At the expiration or termination of the lease, the State is to purchase the facilities from UDC at a nominal price (Prison Construction Act § 7 [1]).
It is interesting to note that this elaborate financing scheme was devised after the voters of this State, by a referendum in November of 1981, defeated a direct State bond issue of $500,000,000 for the construction and renovation of correctional facilities (see, L 1981, ch 850, § 10).
In a previous action, plaintiffs, joined by several organizations including the New York State Coalition for Criminal Justice, Inc., challenged the constitutionality of the statutory financing scheme asserting legal standing as taxpayers. The basis of their constitutional challenge was, inter alia, that the statute in reality caused the State to incur a long-term debt without voter approval in contravention of NY Constitution, article VII, § 11. This court, by judgment entered December 22, 1983 in Albany County, determined that all plaintiffs in that action lacked taxpayer standing and dismissed the case. One cause of action dealing with affirmative action provisions of the Prison Construction Act was not dismissed, but is not at *132 issue here. The Appellate Division, Third Department, held that while the organizations lacked taxpayer standing, the individual plaintiffs in that action (the only plaintiffs in the present case) had taxpayer standing (New York State Coalition for Criminal Justice v Coughlin, 103 AD2d 40, 42-44). On the merits, the Appellate Division upheld the constitutionality of the statute and affirmed summary judgment in favor of defendants (supra, at pp 45-46).
On appeal, the Court of Appeals affirmed, but on the ground that the individual plaintiffs lacked taxpayer standing and, therefore, never addressed the merits (New York State Coalition for Criminal Justice v Coughlin, 64 NY2d 660, 662). Significantly, the Court of Appeals and the Appellate Division expressly refused to consider voter standing since plaintiffs improperly raised that issue for the first time on appeal (New York State Coalition for Criminal Justice v Coughlin, 64 NY2d 660, 662, n, affg 103 AD2d 40, 43, supra).[2]
The individual plaintiff from Coughlin I (supra) brought the present action challenging the constitutionality of the statutory financing scheme solely on the basis that it violates NY Constitution, article VII, § 11. Plaintiffs assert standing as voters and taxpayers. Defendants moved for summary judgment dismissing the complaint and by order to show cause, plaintiffs cross-moved for leave to serve an amended complaint containing more specific allegations and seeking to have specific sections of the Prison Construction Act declared unconstitutional. This court found in favor of defendants on their motion and against plaintiffs on the cross motion. Plaintiffs’ motion for reargument ensued.
STANDING
As in Coughlin I (supra), plaintiffs challenge the constitutionality of the financing scheme created by the Prison Construction Act. Plaintiffs assert that the substance of this action differs from that of Coughlin I in that only the UDC bond issuing provisions were the only aspects of the Prison Construction Act challenged in Coughlin I. In reality, however, Coughlin I also apparently dealt with the leaseback and repurchase provisions of the Act as is evident from the Appellate Division decision. Plaintiff challenges these same provisions here.
*133 Although plaintiffs’ proposed amended complaint specifies only certain sections of the statute which are challenged, these sections comprise the operative provisions of the funding structure, the heart of which is the issuance of bonds and notes by UDC. While the proposed amended complaint is carefully phrased to omit a challenge to Prison Construction Act § 5 which authorizes UDC to issue bonds and notes, plaintiffs’ challenge to the operative provisions of the statute is tantamont to a challenge of the "entire funding scheme”. Such a challenge includes the bond and note issuing provisions of the Act at issue in Coughlin I. Plaintiffs in Coughlin I also sought to permanently enjoin UDC from issuing bonds yet the primary focus was, as here, to declare the Prison Construction Act unconstitutional. Following the Court of Appeals decision, this court is constrained to deny plaintiffs standing as taxpayers in the present action (New York State Coalition for Criminal Justice v Coughlin, 64 NY2d 660, supra).
The issue of voter standing, however, requires a more detailed analysis. New York has a judicially adopted "zone of interest” test for legal standing (Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9). To obtain standing, a plaintiff must show that the governmental action complained of will cause him injury in fact and that the interest he advances is arguably within the zone of interest to be protected by statute. As to the second requirement, the class of persons entitled to judicial review of the validity of governmental action is broadly defined and standing should be denied only where there is a clear legislative intent to negate judicial review or there is no injury in fact (see, Matter of District Attorney of Suffolk County, 58 NY2d 436, 442; Matter of Goldberg v Axelrod, 104 AD2d 520, 520-521, lv denied 64 NY2d 602).
As voters, plaintiffs satisfy both aspects of the zone of interest test. If plaintiffs are correct in their assertion that the Prison Construction Act amounts to a long-term State debt without voter approval, their right as voters to pass on such an issue has been abridged (NY Const, art VII, § 11). An injury in fact need not be an out-of-pocket loss (Matter of Dental Socy. v Carey, 61 NY2d 330, 333-334), and an abridgment of the right guaranteed by the State Constitution would be an injury in fact to plaintiffs.
Relative to the second aspect of the zone of interest test, NY Constitution, article VII, § 11 seeks to protect the rights of all *134 voters in this State, a class of persons to which each plaintiff in this case is a member, moreover, if plaintiffs are denied standing as voters, it seems unlikely that any other person or organization will challenge the statute in question, and a denial of plaintiffs’ voter standing would create an "impenetrable barrier to any judicial scrutiny of [the] legislative action” (Boryszewski v Brydges, 37 NY2d 361, 364). There is no clear legislative intent to negate judicial review of this issue based upon voter standing; as contrasted to such an intent demonstrated by State Finance Law § 123-b regarding plaintiffs’ standing as taxpayers (see, New York State Coalition for Criminal Justice v Coughlin, 64 NY2d 660, 662, supra). Plaintiffs, therefore, have standing as voters to challenge the constitutionality of the Prison Construction Act.
STATUTE OF LIMITATIONS ISSUE
In their answer, defendants assert as an affirmative defense that plaintiffs have failed to timely commence this action under the specific 30-day Statute of Limitations established by Prison Construction Act § 14. Section 14 of the Prison Construction Act, in pertinent part, provides that "any proceeding to review any determination or action of any State body, the corporation, or any director, officer, employee or agent thereof, * * * whether seeking injunctive, declaratory or other relief, in connection with the correctional facilities financed pursuant to this act, shall be commenced within thirty days after such action or determination is made or filed”.
By its terms, this specific Statute of Limitations is inapplicable to the instant case since this is a declaratory judgment action challenging the constitutionality of the statutory financing scheme rather than any determination or action taken pursuant to the statute. As a challenge to the constitutionality of the statute itself, the six-year Statute of Limitations of CPLR 213 (1) would apply (see, Press v County of Monroe, 50 NY2d 695; Unanue v Town of Gardiner, 105 AD2d 1025, 1026-1027). Plaintiffs have, therefore, timely commenced the present action.
CONSTITUTIONALITY
Turning to the merits of the constitutional challenge, this court finds the opinion of the Appellate Division on the issue in New York State Coalition for Criminal Justice v Coughlin (103 AD2d 40, 46-47, affd on other grounds 64 NY2d 660, *135 supra) to be instructive although not controlling. As pointed out by the Appellate Division, plaintiffs must overcome a strong presumption of constitutionality which attaches to a legislative enactment. (New York State Coalition for Criminal Justice v Coughlin, 103 AD2d 40, 46, supra; see also, Kradjian v City of Binghamton, 104 AD2d 16, 17.) Such a presumption is especially recognized in the area of public financing and can only be overcome by a clear showing of unconstitutionality (Wein v Beame, 43 NY2d 326, 331). Plaintiffs must clearly demonstrate that the Prison Construction Act creates a State long-term debt without voter approval as required by NY Constitution, article VII, § 11. Plaintiffs have failed to carry this burden.
By the terms of the statute, UDC issues and is obligated under the bonds and notes, not the State. Additionally, the bonds and the notes are secured only by project revenues, without recourse against any State assets (Prison Construction Act § 5). While the project revenues will be primarily, if not entirely, derived from rental income paid by the State pursuant to its leasing of the facilities from UDC, the statute nowhere requires the State to enter such leases. Rather, the statute authorizes the State to lease the facilities if it so chooses (Prison Construction Act § 7 [1]). The court is unable to find that the State is required to contract a long-term debt in violation of NY Constitution, article VII, § 11 under the terms of the statutory financing scheme.
In Wein v City of New York (36 NY2d 610), cited by the Appellate Division in Coughlin I (64 NY2d 660, supra), the Court of Appeals found that the City was not obligated under bonds issued by a nonprofit corporation although the debt service on those bonds was to be paid from a fund replenished by yearly appropriations from the" City. Similarly, the State is not obligated for the debt service on the bonds and notes in question here by virtue of the statutory requirement that the rental under any lease, if entered by the State, be equivalent to such debt service (Prison Construction Act § 7 [1]).
The court is cognizant of the argument that the financing scheme is nothing more than an "end run” around the requirements of NY Constitution, article VII, § 11, amounting to a legislative fiat of what could not be accomplished by referendum. Such a view, however, is a gross overgeneralization. Admonished to proceed with caution on this review of "intricate scheme for public financing * * * designed to meet a public interest,” and not to substitute its policy views for *136 those of the Legislature (New York State Coalition for Criminal Justice v Coughlin, 103 AD2d 40, 46, 47, citing Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358), this court finds statutory financing scheme of the Prison Construction Act to be within the bounds of NY Constitution, article VII, § 11.
Since plaintiffs’ claims under the US Constitution 14th Amendment and 42 USC § 1983 seem predicated upon the specialized right to vote guaranteed by NY Constitution, article VII, § 11, defendants’ motion for summary judgment dismissing the complaint is granted in its entirety. Given this court’s decision, plaintiffs’ cross motion to serve an amended complaint is dismissed.

. Note an error in McKinney’s Unconsolidated Laws of NY § 6267 (3) (1) where the figures denote $284,000,000. The correct sum, however, is properly written out in that section.

. An abbreviated reference to this case shall be Coughlin I.